RENDERED: SEPTEMBER 18, 2020; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2019-CA-001334-MR

MOHAMMED LEMINE OULD AHMED                    APPELLANT

APPEAL FROM BOONE CIRCUIT COURT
v.        HONORABLE RICHARD A. BRUEGGEMANN, JUDGE
ACTION NO. 17-CI-00285

EL HASSEN OULD MOHAMED                        APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE: CLAYTON, CHIEF JUDGE; TAYLOR AND L. THOMPSON, JUDGES.

CLAYTON, CHIEF JUDGE: Appellant, Mohammed Lemine Ould Ahmed

("Ahmed"), appeals the Boone Circuit Court's summary judgment order

dismissing his case against Appellee, El Hassen Ould Mohamed ("Mohamed").

For the following reasons, we affirm.

## BACKGROUND

This case involves a business dispute between Ahmed and Mohamed. On February 27, 2017, Ahmed filed a complaint against Mohamed alleging breach of contract, wrongful termination, loss of profits, assault, battery, fraud, conversion, and punitive damages. Ahmed alleged that he and Mohamed entered into contracts in December 2015 and June 2016 relating to three businesses: H.I.S., LLC ("the LLC"), Dixie Meat Market, and Dixie Tires. Ahmed claimed Mohamed breached the contracts by failing to give him the agreed-upon salary and a certain percentage of the profits. Also, despite his investment in the companies as a part-owner, Ahmed claimed that Mohamed treated him like an employee by sending him a letter terminating their Operating Agreement. Ahmed further alleged that he was injured on October 3, 2016, after being physically removed from the business location of the LLC.

In his answer, Mohamed denied that Ahmed had a partnership interest in any of the businesses and claimed he did not owe Ahmed any salary or percentage of the profits. In addition, he claimed the police removed Ahmed from the business location because he destroyed property after learning of his termination.

On June 15, 2017, pursuant to Kentucky Rules of Civil Procedure (CR) 24.01, the LLC moved to intervene in the case because of its interest in

Ahmed's termination from the company and to assert claims against Ahmed for theft by unlawful taking, conversion, and fraud. According to the intervening complaint, Ahmed was an employee/manager of Airport Yellow Cab, an assumed name of the LLC. The LLC claimed that Ahmed used company checks, totaling $56,000, to pay his personal creditors. Also, Ahmed purchased $80,000 worth of metal detectors with company funds and was supposed to sell them for a profit in Mauritania, the home country of both Ahmed and Mohamed. However, the LLC alleged Ahmed only returned with $9,000 and kept the rest of the proceeds for himself. As a result, the LLC terminated its agreement with Ahmed. Ahmed then damaged a computer and office equipment, which precipitated his arrest for criminal mischief, assault, and terroristic threatening.

On June 27, 2017, the trial court granted the LLC's motion for leave and entered the intervening complaint of record. The trial court also ordered Ahmed to file an answer or otherwise respond to the intervening complaint within twenty days, which Ahmed did not do.

One year later, because no pretrial steps had been taken, the Boone Circuit Court Clerk issued a notice to dismiss for lack of prosecution pursuant to CR 77.02(2). The parties were ordered to appear for a show cause hearing on August 31, 2018.

Two days before the hearing, Ahmed filed a motion to keep the case on the trial court's active docket along with an affidavit from his attorney explaining that Ahmed had been dealing with the underlying criminal case. He also notified the trial court that mediation was scheduled for September 2018. As a result, the trial court continued the show cause hearing until December 14, 2018.

On November 28, 2018, Ahmed filed another motion to keep the case on the trial court's active docket. Ahmed claimed Mohamed refused to participate in the previous mediation but had now agreed to participate. Thus, the trial court continued the show cause hearing until April 26, 2019.

Before the April 2019 show cause hearing, Mohamed filed a motion for summary judgment claiming the parties had no contract, so Ahmed's claim for breach of contract must fail. Mohamed also claimed that Ahmed failed to answer discovery requesting him to identify facts, documents, or witnesses to support his claims for assault, battery, fraud, and conversion, so those claims must fail.[1] Finally, he claimed that Ahmed failed to prove oppression, fraud, or malice, so Ahmed's punitive damages claim must fail.

---

[1] Mohamed attached the requests for admission, interrogatories, and requests for production of documents he propounded to Ahmed on June 9, 2017 but did not attach Ahmed's answers to the requests for admission, which were served on June 29, 2017. If Ahmed answered Mohamed's interrogatories and requests for production of documents, they are not in the record and Ahmed did not attach those to his summary judgment response.

In his response to Mohamed's summary judgment motion, Ahmed submitted various documents to the trial court trying to establish he had a contractual relationship with Mohamed. He also filed a motion for leave to respond to "Defendant's Counterclaim/Complaint," which the trial court took as a motion for leave to file an answer to the LLC's intervening complaint.[2]

On April 16, 2019, the trial court heard Mohamed's motion for summary judgment and Ahmed's motion for leave to file a "response to Defendant's Counterclaim/Complaint." Based on the video record, Ahmed's attorney apparently notified the trial court's secretary he would be late for the 9:00 a.m. motion hour and requested the motions be called after 9:30 a.m. Around 9:45 a.m., at the foot of the docket, the trial court called the case. Ahmed's attorney was still not present. The trial court entered an order denying Ahmed's motion. The trial court then ordered Mohamed to submit a reply in support of his motion for summary judgment and stated the motion would then be taken under submission. The trial court also remanded the case from the April 26, 2019 show cause docket.

On April 26, 2019, Ahmed's attorney filed a motion to withdraw stating that Ahmed was going to obtain another attorney and requested that Ahmed

---

[2] Ahmed tendered an answer to the LLC's intervening complaint a few days after filing his motion for leave.

be given thirty days to retain other counsel. In addition, Ahmed filed a "renewed motion for leave to file response to defendant's counterclaim/complaint." In support of this motion, Ahmed's attorney claimed that he missed the April 16, 2019 hearing because of a "criminal case emergency" in another county and, because no prejudice occurred, requested he be allowed to file an answer to the intervening complaint.

At the May 7, 2019 hearing of Ahmed's two motions, the trial court told Ahmed's attorney that the motion to withdraw was not compliant with the Local Rules because his client had not signed the motion and no substitute attorney was present for Ahmed.[3] Therefore, the trial court deemed the motion to withdraw as "withdrawn."[4] As for Ahmed's "renewed motion for leave," the trial court stated that Ahmed could not renew a motion that was already denied but agreed to treat the "renewed motion" as a motion to reconsider and took it under submission.

---

[3] Pursuant to the Boone Gallatin Local Rules, Rule 4C, "Withdrawal of Attorney of Record," an attorney "shall move for permission to withdraw as counsel for a party only: (1) [u]pon his or her written request with the written consent of his or her client and the entry of appearance of a substitute attorney of record, or (2) [u]pon his or her written request with notice to the client and a showing of good cause with the consent of the court and upon such terms as the court shall impose."

[4] In its June 20, 2019 order, the trial court stated it denied Ahmed's attorney's motion to withdraw due to non-compliance with the Local Rules and because the motion "was contingent upon (Ahmed) obtaining other counsel." Ahmed raises no issue on appeal regarding his attorney's motion to withdraw.

Subsequently, Ahmed filed three more motions: (1) motion requesting the trial court to stay its ruling on the summary judgment motion; (2) motion for leave to file an amended complaint to add a defamation claim; and (3) motion for a hearing to take testimony under CR 9. In response, Mohamed stated that Ahmed's motions failed to include supporting memorandums in violation of the Local Rules, Ahmed's proposed amended complaint was futile to his claims, and CR 9 does not authorize hearings to take testimony.

At the June 18, 2019 hearing of Ahmed's motions, Ahmed argued that he was still unearthing details of the case, while Mohamed urged the trial court to grant his pending summary judgment motion. The trial court expressed concern that "too little" had been done in the case and it may be "too late," but made no ruling that day.

On June 20, 2019, the trial court entered an order addressing the various pending motions. First, the trial court denied Ahmed's motions to stay, for leave to file an amended complaint to add a defamation claim, and for a hearing to take testimony under CR 9. Second, the trial court granted Ahmed's motion for leave to file an answer to the LLC's intervening complaint and ordered him to file an answer within fifteen days. Third, the trial court granted Mohamed's summary judgment motion. In its ruling, the trial court held that the purported contracts, although signed by Mohamed, were signed in his capacity as owner of the LLC.

Therefore, Ahmed's breach of contract claim against Mohamed failed. For the remaining claims, the trial court found that Ahmed failed to set forth the required elements of the claims in his complaint. And, even if it ignored this deficiency under the notice pleading standard, the trial court found Ahmed failed to respond to discovery with a factual basis to prove his claims. While acknowledging that Ahmed presented some evidence with his summary judgment response, Ahmed failed to explain how these exhibits established his claims. Finally, the trial court ordered that, unless trial was scheduled or some other resolution was pending, the case would be on its show cause docket for August 16, 2019, to explain why the case should not be dismissed in its entirety for lack of prosecution.

Despite the order permitting Ahmed to file an answer out-of-time, Ahmed did not file his answer to the LLC's intervening complaint. Subsequently, on August 5, 2019, the LLC filed a CR 41.01 notice of voluntary dismissal of its intervening claims against Ahmed. And, at the August 16, 2019 show cause hearing, the parties agreed that the case had been dismissed in its entirety with the voluntary dismissal of the LLC.[5] This appeal followed.

---

[5] The trial court did not enter a formal dismissal order, although the trial court and parties agreed the case was dismissed at the August 16, 2019 hearing. Also, because Ahmed never filed an answer to the LLC's intervening complaint, pursuant to CR 41.01, the LLC could dismiss its claims "without order of court" and, thus, no dismissal order was needed.

## ANALYSIS

Before addressing the merits of the appeal, we discuss Mohamed's argument that Ahmed violated CR 76.12(4)(c) by failing to cite to the record in the Appellant's brief. Under this Rule, an appellant must provide "ample references to the specific pages of the record" in his "Statement of the Case" and in his "Argument." When a party fails to comply with CR 76.12, the Court may ignore the flaws and grant review; strike the brief or its offending portions; or review the issues for manifest injustice only. *Hallis v. Hallis*, 328 S.W.3d 694, 696 (Ky. App. 2010).

Failing to comply with CR 76.12 is "an unnecessary risk the appellate advocate should not chance." *Smothers v. Baptist Hospital East*, 468 S.W.3d 878, 881 (Ky. App. 2015). "Although noncompliance with CR 76.12 is not automatically fatal, we would be well within our discretion to strike the brief or dismiss the appeal" for Ahmed's failure to comply with the rules. *Id.* at 882. However, when Mohamed called the CR 76.12 deficiency to Ahmed's attention in the Appellee's brief, Ahmed corrected the deficiency in his reply brief by providing *post hoc* citations to the record. Because Ahmed made a "good faith effort" to rectify the deficiency and comply with CR 76.12, we will not impose a harsh sanction, but remind counsel that such latitude may not be extended in the

future.  *Daugherty v. Commonwealth*, 467 S.W.3d 222, 233-34 (Ky. 2015).  With that said, we turn to the summary judgment order at issue in this case.

Under CR 56.03, summary judgment is authorized "if the pleadings, depositions, answers to interrogatories, stipulations, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  To be granted summary judgment, the movant must prove no genuine issue of material fact exists, and he "should not succeed unless his right to judgment is shown with such clarity that there is no room left for controversy."  *Steelvest, Inc. v. Scansteel Service Center, Inc.*, 807 S.W.2d 476, 482 (Ky. 1991).  Also, the trial court must view the evidence in favor of the party opposing the motion.  *City of Florence, Kentucky v. Chipman*, 38 S.W.3d 387, 390 (Ky. 2001).  "The party opposing a properly presented summary judgment motion cannot defeat it without presenting at least some affirmative evidence showing the existence of a genuine issue of material fact for trial."  *Id.*

On appeal, our standard of review is "whether the trial court correctly found that there were no genuine issues as to any material fact and that the moving party was entitled to judgment as a matter of law."  *Scifres v. Kraft*, 916 S.W.2d 779, 781 (Ky. App. 1996).  Furthermore, because summary judgments involve no fact finding, our review is *de novo* and we owe no deference to the conclusions of

-10-

the trial court. *Pinkston v. Audubon Area Community Services, Inc.*, 210 S.W.3d 188, 189 (Ky. App. 2006).

We recognize that summary judgment is a "delicate matter" because it "takes the case away from the trier of fact before the evidence is actually heard." *Steelvest, Inc.*, 807 S.W.2d at 482. Yet, as stated in *Neal v. Welker*, 426 S.W.2d 476, 479 (Ky. 1968), "[t]he curtain must fall at some time upon the right of a litigant to make a showing that a genuine issue as to a material fact does exist." Although Ahmed argued he was still unearthing details of his case, we carefully outlined the procedural history of this litigation to illustrate that "[t]he hope or bare belief . . . that something will 'turn up,' cannot be made basis for showing that a genuine issue as to a material fact exists." *Id.* at 479-80. "The purpose of summary judgment procedure is to expedite disposition of civil cases and to avoid unnecessary trials where no genuine issues of fact are raised." *Continental Cas. Co. v. Belknap Hardware & Mfg. Co.*, 281 S.W.2d 914, 916 (Ky. 1955). With this in mind, we turn to the issues in this case.

**Breach of contract/wrongful termination/loss of profits**

In Count I of his complaint, Ahmed alleged breach of contract, wrongful termination, and loss of profits. According to Ahmed, those claims are based on two documents: the December 2015 purported contract and the June 2016 Operating Agreement. The December 2015 document states that Mohamed

is owner of the LLC and "by signing this document I am stating that (Ahmed) owns 33%" of the LLC. The document is signed by both Ahmed and Mohamed. The document is also witnessed and notarized to make it "binding and legal." Meanwhile, the June 2016 Operating Agreement states that Ahmed is the Operator of the LLC while Mohamed is the Owner. Under this Operating Agreement, Ahmed was to manage the taxi business and be compensated $800 per week, plus 25% of the Owner's net profits. This Agreement clearly states that it is between the LLC and Ahmed. This Agreement also states that it "supercedes (sic) and controls the actions of the parties and nullifies any other oral agreements or understandings entered into by the parties." Furthermore, the Agreement recognizes Ahmed's "investment in time and professional services performed for Owner" and states Ahmed will receive 20% of the sale price if the LLC is sold. This Agreement is signed by Ahmed and Mohamed, as the Owner, Member, and Officer of the LLC, and is notarized.

Under Kentucky law, to recover under a breach of contract claim, plaintiff must show the existence and breach of a contractually imposed duty. *Kentucky Farm Bureau Mut. Ins. Co. v. Blevins*, 268 S.W.3d 368, 374 (Ky. App. 2008) (citing *Strong v. Louisville & N. R. Co.*, 240 Ky. 781, 43 S.W.2d 11, 13 (1931)). Further, contract interpretation is a question of law. *Cantrell Supply, Inc. v. Liberty Mut. Ins. Co.*, 94 S.W.3d 381, 385 (Ky. App. 2002).

Here, the trial court granted summary judgment on Count I because the two purported contracts appeared to be signed by Mohamed "as owner" of the LLC. Although the trial court does not specify, its stated reasoning implies that the contracts were between Ahmed and the LLC, not between Ahmed and Mohamed. Because Ahmed did not sue the LLC, his breach of contract claim against Mohamed failed.

We agree with the trial court's decision. While the December 2015 document is arguably between Ahmed and Mohamed, as an individual, we agree that the June 2016 Agreement clearly states that it is between Ahmed and the LLC. Moreover, the June 2016 Agreement specifically states that it supersedes any previous agreements or understandings between the parties, so that Agreement controls. *See Menefee v. Rankins*, 158 Ky. 78, 164 S.W. 365, 367 (1914) (holding a written contract complete in itself will be conclusively presumed to supersede a prior one related to the same subject matter). Ahmed's breach of contract claim against Mohamed fails because he had a contract with the LLC, not Mohamed. *Presnell Const. Managers, Inc. v. EH Const., LLC*, 134 S.W.3d 575, 579 (Ky. 2004) ("obligations arising out of a contract are due only to those with whom it is made; a contract cannot be enforced by a person who is not a party to it or in privity with it"). Therefore, we affirm summary judgment as to Count I.

**Assault and battery/vicarious liability; fraud/conversion; and punitive damages**

For Counts II, III, and IV[6] of his complaint, Ahmed alleged assault and battery and vicarious liability, fraud/conversion, and punitive damages, respectively. We briefly review the elements of these claims.

For Count II, Ahmed had to prove "the threat of unwanted touching of the victim, while battery requires an actual unwanted touching." *Banks v. Fritsch*, 39 S.W.3d 474, 480 (Ky. App. 2001). And, for "vicarious liability," Ahmed had to prove the tortious acts of Mohamed's unnamed "associates," in physically removing him from the LLC's location as stated in Ahmed's complaint, could be imputed to Mohamed. *American General Life & Acc. Ins. Co. v. Hall*, 74 S.W.3d 688, 692 (Ky. 2002).

For Count III, to establish fraud, Ahmed had to prove: (1) Mohamed made a material representation to Ahmed; (2) which was false; (3) which was known by Mohamed to be false or made recklessly; (4) that Mohamed intended Ahmed to act upon the misrepresentation; (5) that Ahmed reasonably relied upon the misrepresentation; and (6) the misrepresentation caused injury to Ahmed. *Giddings & Lewis, Inc. v. Industrial Risk Insurers*, 348 S.W.3d 729, 747 (Ky. 2011). For conversion, Ahmed had to prove: (1) he had legal title to converted

---

[6] Ahmed's complaint and amended complaint mistakenly label Count IV as a duplicate "Count III."

property; (2) he had the right to possess the property at the time of conversion; (3) Mohamed exercised dominion over Ahmed's property; (4) Mohamed intended to interfere with Ahmed's possession; (5) Ahmed demanded return of the property and Mohamed refused; (6) Mohamed's act was the legal cause of Ahmed's loss of the property; and (7) Ahmed suffered damages from the loss of the property. *Jones v. Marquis Terminal, Inc.*, 454 S.W.3d 849, 853 (Ky. App. 2014).

Finally, for Count IV, to prove punitive damages, Ahmed had to prove that Mohamed acted toward him with oppression, fraud, or malice. Kentucky Revised Statutes (KRS) 411.184(2).

In its order, the trial court addressed these foregoing claims collectively and stated that, although Ahmed provided several exhibits in response to Mohamed's summary judgment motion, he failed to explain how the exhibits established the various elements of these claims. The trial court cited *Commonwealth v. Roth*, 567 S.W.3d 591, 594 (Ky. 2019) for the proposition that it should not have to comb through the exhibits to determine if there is support of a party's generic assertions.

Once again, we agree with the trial court. In responding to a summary judgment motion, Ahmed had a duty to put forth affirmative evidence showing the existence of a genuine issue of material fact regarding his claims. While Ahmed put forth evidence in the form of exhibits, he failed to show how this evidence

created a genuine issue of material fact. Instead, Ahmed's summary judgment response and his appellate briefs focus on why his case should not be dismissed for failure to prosecute. Although Ahmed's case was on the trial court's show cause docket multiple times, the trial court ultimately dismissed the case on summary judgment grounds, not pursuant to CR 41.01 or CR 77.02.

To be fair, the Court examined the exhibits Ahmed presented to the trial court. Aside from the December 2015 and June 2016 documents we discussed above, Ahmed submitted an October 3, 2016 hospital document where he was diagnosed with injuries "due to physical assault." Ahmed also submitted an October 4, 2016 letter from a law firm representing the LLC, which terminated the Operating Agreement because Ahmed "repeatedly failed to perform (his) duties" and was in material breach by "failing to show up for work for weeks at a time." In addition, Ahmed submitted a cell phone agreement, documents relating to Dixie Meat Market, LLC listing both Ahmed and Mohamed as members of that LLC, copies of H.I.S., LLC checks payable to unexplained persons and entities, his responses to Mohamed's requests for admission, and some of Mohamed's discovery responses. None of the exhibits were accompanied by an affidavit or other type of authenticating documentation. And, Ahmed failed to explain the significance of the exhibits in his pleadings and briefs. The exhibits were simply "dumped" in the record without explanation.

Without affirmative evidence showing a genuine issue of material fact, we conclude that the trial court properly held that Ahmed's remaining claims in Counts II-IV must fail. Mohamed was entitled to judgment as a matter of law.

<u>CONCLUSION</u>

For the foregoing reasons, we affirm the trial court's order granting summary judgment to Mohamed.

ALL CONCUR.


BRIEFS FOR APPELLANT:

Erik J. Wilbekin
Covington, Kentucky

BRIEF FOR APPELLEE:

Todd V. McMurtry
Justin Whittaker
Fort Mitchell, Kentucky